IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DANIEL J. CARWILE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:10CV456-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION and ORDER**

Plaintiff Daniel J. Carwile brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that this action is due to be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff was born on March 11, 1986 and completed twelfth grade in special education classes in 2004. On June 5, 2006 (protective filing date), when he was twenty years old, plaintiff filed an application for supplemental security income, alleging that he is disabled due to a "learning disability." He asserted that he cannot read or write, and he

"can't keep a job." He stated that he stopped working on August 1, 2005 because he "couldn't handle the job." (R. 71, 82, 85, 88). Plaintiff testified that, for one month at some point after his alleged onset date, he worked at Victoryland as a dishwasher. He stated that the job ended because he "couldn't understand nothing," "couldn't do two things at one time[,]" and, also, because "there's too many people there and I didn't – I don't get along. I mean, I do get along with them but I just couldn't." (R. 27, 30). In the disability report plaintiff submitted in support of his application for benefits, he also reported work as a dishwasher from 2001-2002, while he was still in school. (R. 83). He further reported work for an asphalt contractor for two weeks, from July 15, 2005 to August 1, 2005. (R. 100). Plaintiff worked briefly with his brother and brother-in-law at a marble company, helping with cleaning and pouring sinks. Plaintiff told Dr. Daniel Clark, the consultative psychologist, that he "couldn't read the work orders to know what to do to help out" and testified at the administrative hearing that the "problem there" was that he "didn't like working around too many people." (R. 30, 157).[1]

Plaintiff saw Dr. Clark on September 5, 2006 for a consultative psychological evaluation. (Exhibit 2F). Dr. Clark administered the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III). Plaintiff's testing yielded a Verbal IQ score of 62, a Performance IQ score of 69 and a Full Scale IQ score of 62. (R. 158-59). Dr. Clark assessed "Mild

---

[1] When the DDS claims examiner contacted plaintiff to clarify his past work history, plaintiff was "unable to give complete details of jobs worked" and "stated he did not work anywhere very long." (R. 108; see also R. 111). The ALJ concluded that plaintiff had no past work that "has lasted long enough to be definitively classified as past relevant work." (R. 18, Finding No. 6).

Mental Retardation" on Axis II and "No Diagnosis" on Axis I. (R. 156). Dr. Aileen McAlister, a non-examining agency psychiatrist, completed a Psychiatric Review Technique Form on September 12, 2006. She concluded that plaintiff suffers from mild mental retardation which results in a moderate degree of limitation in activities of daily living, maintaining social functioning, and in maintaining concentration, persistence or pace. Dr. McAlister indicated "None" in the category of "Episodes of Decompensation[.]" (Exhibit 3F; R. 162, 171). Dr. McAlister also completed a mental residual functional capacity assessment, finding moderate limitations in several rated work functions, no significant limitations in others, and no marked limitations as to any of the listed work functions. She concluded that plaintiff is "[c]apable of understanding[,] remembering, and carrying out simple instructions over an 8[-]hr work day with routine breaks" and that "[c]ontact with coworkers, supervisors, and [the] general public should be casual and non-confrontational and changes in the work place introduced slowly due to IQ in Mild MR range." (Exhibit 4F, R. 175-77).

The only medical treatment notes of record are for three emergency room visits. Plaintiff sought treatment on April 13, 2006 for a red knot on the left side of his abdomen, diagnosed as "cystic mass [left] abdom[inal] wall. Poss[ible] insect bite[.]" Plaintiff was discharged after two hours with a prescription and instructions to follow up with "Dr Courtney." (R. 187-88). Eleven months later, on March 21, 2007, plaintiff returned to the ER complaining of pain and redness in his right eye after he accidently snapped himself in the eye with an extension cord. He was diagnosed with a "subconjunctival hemorrhage," given a prescription, and discharged forty minutes after he arrived in the ER. (R. 185-86).

On May 11, 2008, over thirteen months after his previous visit to the ER, plaintiff returned seeking treatment for right shoulder pain which had persisted for two months. X-rays of plaintiff's shoulder and neck were normal. The ER physician diagnosed plaintiff with cervical strain. (R. 179-84).

Consistent with the diagnosis of the consultative psychologist, the ALJ found that plaintiff has a single "severe" impairment of mild mental retardation. However, the ALJ concluded that plaintiff's condition is not at a level sufficient to meet or medically equal Listing 12.05. (R. 13). The ALJ further determined that there are jobs existing in significant numbers that plaintiff can perform, considering his age, education, work experience, and residual functional capacity and, therefore, that he was not disabled during the relevant period. (R. 19). The ALJ issued his decision on Monday, November 3, 2008.

Three days later – on Thursday, November 6, 2008 – plaintiff was evaluated by Donald W. Blanton, Ph.D. (R. 1; see also Doc. 11-1, attachment to plaintiff's brief). Dr. Blanton reviewed Dr. Clark's report of the consultative evaluation in 2006 and some of plaintiff's school records. Dr. Blanton administered the WAIS-III to plaintiff, with resulting IQ scores of 63 (Verbal), 62 (Performance) and 59 (Full Scale). Plaintiff's highest percentile score on the Wide-Range Achievement Test (WRAT-III) was .03 in Arithmetic. Dr. Blanton concluded that plaintiff is functionally illiterate. Like Dr. Clark, he assessed mild mental retardation on Axis II. However, Dr. Blanton further concluded that plaintiff has an Axis I diagnosis of "Social Phobia with Anxiety and Depression." Dr. Blanton noted plaintiff's report that he "no longer attends church because he becomes very anxious around people there," and that, at his last job at Victoryland, "[h]e could not stand being around the other

people and he called in sick too many times." On mental status examination, Dr. Blanton noted plaintiff's depressed mood and his "significant fear of being in public and around people." (Doc. # 11-1). Dr. Blanton completed a questionnaire in which he indicated that plaintiff has "marked" limitations in the areas of: (1) maintaining social functioning; and (2) concentration, persistence or pace; he further concluded that plaintiff has a "marked" impairment in his ability to perform simple tasks and repetitive tasks in a work setting and to "[u]nderstand, carry out, and remember instructions in a work setting." Dr. Blanton responded affirmatively to the question, "Have the above limitations lasted or can they be expected to last for twelve months or longer?" (Id.).

Plaintiff submitted Dr. Blanton's report to the Appeals Council on November 25, 2008, along with his request for review. (See R. 7, cover letter transmitting both). On March 25, 2010, the Appeals Council denied plaintiff's request for review. The Appeals Council declined to admit Dr. Blanton's report into the record, concluding that it was "new information . . . about a later time." The Appeals Council returned the evidence to plaintiff to file with a new claim for benefits, if he decided to apply again. (R. 1-2, 5).[2] On May 24,

---

[2] While the Appeals Council "looked at the medical assessment from Donald W. Blanton, Ph.D., dated November 6, 2008" (R. 1), the Commissioner agrees that the Appeals Council did not consider the evidence in evaluating the merits of plaintiff's present claim for benefits. (See Doc. # 12, p. 12)("The Appeals Council properly declined to consider [Dr. Blanton's report] and returned it to Plaintiff to submit in a later application."); see also 20 C.F.R. § 416.1470(b)("In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."); 20 C.F.R. § 416.1476(b)("In reviewing decisions based on an application for benefits, the Appeals Council will consider the evidence in the administrative law judge hearing record and any new and material evidence only if it relates to the period on or before the date of the administrative law judge hearing decision. If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence and will

2010, plaintiff filed a complaint in this court seeking review of the Commissioner's decision.

## DISCUSSION

Plaintiff contends that the ALJ erred by failing to develop the record as to a possible additional diagnosis of ADHD, based on plaintiff's testimony that he took medications for attention deficit hyperactivity disorder (Doc. # 12 at p. 8, citing ALJ's decision at R. 15),[3] school records showing that plaintiff was "taking Ritalin while in school" (id., citing R. 127)[4] and was "restless and inattentive in school" (id., citing R. 116).[5] Plaintiff contends that the ALJ erred by failing to find disability under Listing 12.05, because the ALJ found no additional physical or mental impairment as to Listing 12.05C and, as to Listing 12.05D, the ALJ "relied exclusively on the finding of moderate in the first three areas by the consultative psychologist and the reviewing non[-]examining DDS consultant without further rationale." Plaintiff acknowledges that he did not allege ADHD or ADD in his application paperwork, but argues that the ALJ "too readily adopted the consultative and State Agency opinions in 2006" in view of the statement made by plaintiff's sister-in-law to the consultative psychologist that plaintiff "just can't pay attention or comprehend things[.]" (Doc. # 12 at

---

advise you of your right to file a new application."). The Appeals Council's notice of its action denying plaintiff's request for review makes clear that it "looked at" the report and declined to include it as an exhibit or consider it on the merits of plaintiff's claim, concluding that the report did not pertain to the time period "on or before November 3, 2008." (R. 1-2, 5).

[3] See also R. 29, 30-31 (plaintiff's testimony).

[4] The cited record includes an indication that plaintiff's mother reported to plaintiff's high school, during an interview regarding plaintiff's eligibility for special education services, that he was taking Ritalin. (R. 127).

[5] This note reflects that plaintiff was "restless/inattentive during classroom observation" conducted in September 2002 in connection with plaintiff's special education eligibility determination. (R. 116).

p. 7, citing R. 157). However, despite this statement by plaintiff's sister-in-law, the consultative psychologist assessed only mild mental retardation. Plaintiff did not present any *medical* evidence of a diagnosis of ADHD even though, at the hearing, the ALJ expressed his willingness to consider evidence of plaintiff's treatment for ADHD at age eighteen by Dr. McCullough if plaintiff's counsel were to provide it to him (R. 24). The DDS obtained a consultative psychological evaluation which did not result in a diagnosis of ADD or ADHD. It was the only psychological evaluation of record, and the ALJ did not err by relying on it. The court rejects plaintiff's contention that the ALJ erred by failing to further develop the record and his dependent argument that the ALJ erred by failing to find him to be disabled pursuant to Listing 12.05.

Plaintiff further contends that the Appeals Council erred in its treatment of Dr. Blanton's report. (Doc. # 11, pp. 8-10). Plaintiff argues that "[t]he AC rejected this evidence out of hand on the simplistic basis that because the report was dated three days after the ALJ decision, it had no bearing on the period prior to the ALJ decision." (Id. at p. 10). The Commissioner responds by reiterating – without any meaningful analysis – the Appeals Council's conclusion that, because Dr. Blanton's report was based on an interview and testing that took place three days after the date of the ALJ's decision, it "did not relate [to] the time period that ended with the ALJ's decision." (Doc. # 12, p. 12). The Commissioner argues that, therefore, "[t]he Appeals Council properly declined to consider [the report]." (Id.).

The ALJ determined that plaintiff has a severe impairment of mild mental retardation.

(R. 13). However, at the next step of his analysis, he concluded that plaintiff's mental retardation is not at the level required to establish disability under Listing 12.05(B) because "the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less," noting that, in the testing administered by Dr. Clark, he "achieved a full scale intelligence quotient of 62." (R. 14).[6] The ALJ found that plaintiff does not meet the requirement for disability under Listing 12.05(C) because the medical evidence does not demonstrate the existence of any severe impairment other than mild mental retardation, *i.e.*, that plaintiff does not have, in addition to a valid IQ score of 60 through 70, "a physical or other mental impairment imposing an additional and significant work-related limitation of function. (Id). The ALJ concluded that plaintiff does not meet the requirements of Listing 12.05(D) because he does not have – in addition to the requisite valid IQ of 60 through 70 – "marked" restrictions in two of the rated areas (concentration, persistence, or pace; activities of daily living; and maintaining social functioning) or a "marked" restriction in at least one of the three areas accompanied by "repeated episodes of decompensation, each of extended duration." (Id.).

On its face, Dr. Blanton's report expresses conclusions which would – if accepted as valid – satisfy the criteria for disability under Listing 12.05(B).[7] Dr. Blanton reports a full

---

[6] There is nothing in the administrative transcript or Dr. Blanton's report to suggest that plaintiff satisfies the requirement of Listing 12.05(A).

[7] Because the ALJ concluded that plaintiff has a severe impairment of mild mental retardation, plaintiff satisfies the requirement of the introductory paragraph of Listing 12.05 of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶ 12.05; see also DSM IV-TR, p. 41 ("The essential feature of Mental

8

scale IQ score of 59.[8]  Additionally, Dr. Blanton diagnoses an additional mental impairment of "social phobia with anxiety and depression" which, if found to be "severe" and to meet the twelve-month duration requirement, would satisfy the requirement of Listing 12.05(C). Dr. Blanton also concluded that plaintiff has "marked" limitations in maintaining social functioning and "marked" deficiencies in concentration, persistence or pace which have lasted or can be expected to last for twelve months or longer – conclusions which, if accepted, satisfy the requirements of Listing 12.05(D).  Accordingly, if Dr. Blanton's conclusions pertain to plaintiff's condition three days before Dr. Blanton evaluated him, they contradict the ALJ's finding that plaintiff is not disabled.

Dr. Blanton's evaluation did, indeed, occur three days after the ALJ issued his decision.  However, consistent with Dr. Blanton's Axis I diagnosis of "social phobia," plaintiff testified at the administrative hearing on October 3, 2008 that he did not continue working at the marble company – a job he held before his September 2006 evaluation by Dr. Clark and before his July 2005 employment for the asphalt company – because he "didn't like working around too many people," and that this was also one reason he quit working at Victoryland. (R. 30, 100, 157).  Plaintiff also told Dr. Blanton that he "no longer attends church because he becomes very anxious around people there."  (R. 30; Doc. # 11-1). Additionally, as to plaintiff's full scale IQ of 59, there is nothing in the record to suggest that

---

Retardation is significantly subaverage general intellectual functioning . . . that is accompanied by significant limitations in adaptive functioning[.]").

[8]  The record includes evidence of an earlier full scale IQ of 59 on testing in October 1996, when plaintiff was ten years old.  (R. 114).

9

plaintiff suffered any traumatic injury between Monday and Thursday which would account for a decrease in intellectual functioning or that the higher IQ score in the evaluation two years previously – still within the mild mental retardation range – is a more accurate reflection of plaintiff's intellectual abilities.  The mental impairments at issue here are not likely to have appeared or deteriorated suddenly in the two intervening days between the ALJ's decision and plaintiff's appointment with Dr. Blanton.  The Appeals Council's conclusion that Dr. Blanton's November 6, 2008 report "is about a later time" than the period ending on November 3, 2008 is, as plaintiff argues, overly simplistic.  The Appeals Council is required to consider "new and material evidence" submitted to it, where "it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 416.1470(b).  The Appeals Council erred by refusing to consider Dr. Blanton's report in determining plaintiff's request for review.

Plaintiff contends that, since "the evidence was properly presented to the [Appeals Council]," it "can be the basis for Fourth Sentence remand for legal error rather than limited to a Sixth Sentence remand for new and material evidence." (Doc. # 11, p. 10)(citing Ingram v. Commissioner, 496 F.3d 1253 (11th Cir. 2007)).  The Commissioner does not dispute this contention, arguing only that the Appeals Council did not err in refusing to consider Dr. Blanton's report and, while plaintiff does not request sentence six remand, plaintiff has failed to meet the sentence six requirement of demonstrating "good cause" for his failure to submit

the evidence at the administrative level.[9] However, a sentence four judgment and a sentence six remand without a judgment are mutually exclusive; the court must decide which is proper in this case.

It is settled that evidence which is not submitted during the administrative process – *i.e.*, evidence presented for the first time to the district court – may be considered by the court only to determine whether it meets the standard for a "new evidence" remand pursuant to sentence six of 42 U.S.C. § 405(g). Ingram, 496 F.3d at 1267-68 (citing Caulder v. Bowen, 791 F.2d 872, 875-77 (11th Cir. 1986)).  Sentence six review is also appropriate when evidence is first submitted to the Appeals Council, but is not considered or included in the certified transcript because it is untimely – *i.e.*, the evidence is "first properly submitted to the district court." Ingram, 496 F.3d at 1268 (citing Milano v. Bowen, 809 F.2d 763, 765-66 (11th Cir. 1987)).  It is also established that when evidence is submitted properly to the Appeals Council, considered, and incorporated into the administrative transcript, that evidence does not provide a basis for remand pursuant to sentence six, but must be considered by the court – along with the other evidence of record – in reviewing the Commissioner's decision for substantial evidentiary support and legal error under "sentence four" of 42 U.S.C. § 405(g). Ingram, 496 F.3d at 1269.  In Ingram, the Eleventh Circuit held:

> The district court correctly refused to remand Ingram's case under sentence

---

[9] The court notes that, contrary to the Commissioner's argument: (1) plaintiff *did* submit the evidence at the administrative level; and (2) there is no requirement that plaintiff show good cause for his failure to obtain and submit the report to the ALJ.  See Ingram, 496 F.3d at 1266-67.

11

>six. Dr. Wilson's evaluation fails to meet the criteria for a sentence six remand because it is not "new evidence" that the Commissioner "failed to incorporate" into the record of the administrative proceeding. Dr. Wilson's evaluation was properly submitted to the Appeals Council, which considered the evaluation and incorporated it in the administrative record. Sentence six allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously considered by the Appeals Council. Because evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record, that evidence can be the basis for only a sentence four remand, not a sentence six remand.

Id.

In this case, the plaintiff submitted Dr. Blanton's to the Appeals Council with his request for review. (R. 1,7). As plaintiff argues, the Appeals Council's failure to consider the report is "legal error." See Sneed v. Barnhart, 214 Fed. Appx. 883, 885 (11th Cir. 2006)("Because the Appeals Council's refusal to consider the submission of new evidence before denying review amounts to an error of law, that decision is subject to judicial review.")(citing Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994)). While Dr. Blanton's report is not included in the certified administrative transcript the Commissioner filed with the court, it should have been. Cf. Keeton, 21 F.3d at 1067 ("Each successive appeal contributes to the administrative process and, we believe, the administrative record.").[10] It is not "new" evidence for purposes of sentence six of 42

---

[10] The Appeals Council returned the report to plaintiff with its decision denying review, for his use in a new claim, as is authorized by the Commissioner's regulations for evidence submitted to the Appeals Council which "does not relate to the period on or before the date of the administrative law judge hearing decision." See (R. 1-2; 20 C.F. R. §416.1476(b)(1)). However, evidence submitted by a claimant to the Appeals Council should not be omitted from the certified administrative transcript filed with the court, even if the Appeals Council only "looked at" it (R. 1) rather than "consider[ing] the additional evidence" pursuant to 20 C.F.R. § 416.1470(b) and even where, unlike the present case, the Appeals Council has decided

U.S.C. § 405(g). "The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from the fourth sentence], appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). Under sentence six, "[t]he district court . . . does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991)(Sentence six allows the taking of "new evidence . . . that was not available to the claimant at the time of the administrative proceeding."). Because the Appeals Council erred in failing to consider material evidence submitted properly by the claimant, the Commissioner's decision is due to be reversed and this action remanded for consideration of Dr. Blanton's report.[11]

## CONCLUSION

For the foregoing reasons, it is

ORDERED that the administrative transcript is hereby supplemented to include Dr. Blanton's November 6, 2008 report, attached to plaintiff's brief, which the Commissioner

---

correctly that the evidence does not relate to the period under consideration. See Keeton, 21 F.3d at 1067 (holding that "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review.").

[11] The court does not here hold that the Commissioner must, on remand, find that plaintiff is disabled pursuant to Listing 12.05 on the basis of Dr. Blanton's report.

omitted erroneously from the transcript.

The court concludes that the decision of the Commissioner is due to be REVERSED, and this action REMANDED to the Commissioner for further proceedings consistent with this Memorandum Opinion. A separate judgment will be entered.

Done this 30th day of June, 2011.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE